UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUNDER POWER NEW ENERGY VEHICLE DEVELOPMENT COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>BYTON NORTH AMERICA CORPORATION, et al.,<br><br>Defendants. | Case No. 18-cv-03115-JST<br><br>**ORDER GRANTING DEFENDANT BYTON NORTH AMERICA'S MOTION TO DISMISS**<br><br>Re: ECF Nos. 37, 47 |

Two motions are now before the Court: (1) Plaintiff Thunder Power New Energy Vehicle Development Company Limited ("Thunder Power")'s motion for a preliminary injunction prohibiting Defendants Byton North America Corporation ("Byton N.A." or "Byton") and Nanjing Byton New Energy Vehicle Technology Development Co., Ltd. ("Nanjing Byton") from making, using, offering to sell, or selling within the United States, or importing into the United States, vehicles employing the accused functionality, ECF No. 47 at 2; and (2) Defendant Byton's motion to dismiss Thunder Power's patent infringement claims for U.S. Patent Nos. 9,547,373 ("the '373 patent"); 9,563,329 ("the '329 patent"); and 9,561,724 ("the '724 patent"), as directed toward patent-ineligible subject matter. ECF No. 37. The Court will grant the motion to dismiss and deny the preliminary injunction motion as moot.

**I.   BACKGROUND**

Both Thunder Power and Byton are foreign companies focused on developing and manufacturing electric vehicles; Thunder Power is based in Hong Kong, and Byton N.A. designs and develops electric vehicles under the direction of Defendant Nanjing Byton New Energy Vehicle Technology Development Co., Ltd., which is based in mainland China. ECF No. 35

("first amended complaint" or "FAC") ¶¶ 4, 7, 8; ECF No. 20-1 ¶ 3. Thunder Power alleges that several concept cars imported and advertised by Byton N.A. include operating and display systems that infringe its patents: specifically, Byton's "Gesture Control" system ('373 patent) and "Shared Experience Display" system ('329 patent and '724 patent). *Id.* ¶¶ 7-9, 39, 44, 49.

Generally, the '373 patent claims a vehicle operating system that captures and processes gesture signals from both a driver and a passenger, prioritizing signals from the driver where the two conflict. FAC ¶ 20. The '724 patent claims an in-vehicle display system that shows two information panels on an LCD screen, switches the position of the panels in response to a user signal, then switches them back after a set period of time ("switch-back feature"). *Id.* ¶ 31. The '329 patent claims a similar display system, without specifying an LCD screen, which duplicates the first information panel at a third position on the dashboard in response to a user instruction ("screen-duplication feature"). *Id.* ¶ 32.

Byton N.A. now moves to dismiss all three of the patents at issue as abstract and therefore ineligible. ECF No. 37. Thunder Power opposes the motion. ECF No. 44.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "While a complaint . . . does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Under section 101 of the Patent Act, "abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). A However, "an invention is not rendered

2

ineligible for patent simply because it involves an abstract concept." *Id.* Courts must distinguish between patents that claim abstract ideas, on the one hand, and patents "that claim patent-eligible applications of those concepts," on the other hand. *Id.* at 2355. To draw this distinction, courts engage in a two-step analysis.

At step one, courts determine whether the claims at issue are "directed to an abstract idea." *Id.* at 2356-57. For instance, courts ask whether claims are "directed to a specific improvement" or "to a specific implementation of a solution to a problem." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338, 1339 (Fed. Cir. 2016). In cases involving computer-powered innovations, this inquiry "often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities'" or "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quotation omitted). "The purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). A claim that could be performed by a human, excising generic computer-implemented steps, is often abstract. *Intellectual Ventures I LLC v. Alstom S.A.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016); *see also Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1090 (N.D. Cal. 2016) ("[A]utomation of a process using a computer is . . . insufficient to save the asserted claims from abstractness.")

If the court concludes that the claims are directed to an abstract idea, the court must proceed to step two and "consider the elements of each claim both individually and as an ordered combination" to determine "whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2355, 2357 (internal quotation marks omitted). A claim recites an inventive concept "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quotation omitted). Both steps of the *Alice* inquiry are informed by the claims and the specification. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016).

Although the Federal Circuit has stated some patent eligibility challenges must await claim

construction, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018), that court also made plain that in some instances "patent eligibility can [still] be determined at the Rule 12(b)(6) stage." *Id.* And courts in this district and elsewhere continue to grant motions to dismiss on the grounds of patent ineligibility. *See MyMail, Ltd. v. ooVoo, LLC*, No. 17-CV-04487-LHK, 2018 WL 1367385, at *4 (N.D. Cal. Mar. 16, 2018) (dismissing claims as ineligible without claim construction after *Aatrix*); *Kaavo Inc. v. Amazon.com Inc.*, No. CV 14-353-LPS-CJB, 2018 WL 3032505, at *5 (D. Del. June 18, 2018) ("None of the Federal Circuit cases cited by Plaintiff[, including *Aatrix* and *Berkheimer*,] constitutes a change in the law pertaining to § 101.").

## III. DISCUSSION

Citing *Aatrix* and *Berkheimer*, Thunder Power argues that there is a factual dispute around inventiveness as to all three patents-in-suit, such that validity cannot be resolved on a motion to dismiss. ECF No. 44 at 8, 12. However, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer*, 881 F.3d at 1368. Here, the Court resolves the motion as a matter of law based on Thunder Power's own descriptions of the patent.

### A. The '373 Patent

The '373 patent is titled "Vehicle Operating System Using Motion Capture." ECF No. 35-1 at 2. The patent describes a vehicle operating system that captures and processes gesture signals from a driver and a passenger, determines whether the signals are consistent, and executes only the signal from the driver where they are inconsistent. FAC ¶ 20. According to Thunder Power, the patent improves the automotive arts by addressing a problem unique to that sector: "driver and passenger safety associated with inattentive or distracted driving." *Id.* The specification explains that the patent improved on the prior art by "provid[ing] a relatively safe, reliable and convenient operating atmosphere, with reduced driver distraction and less focused attention requirements." ECF No. 35-1 at 10. "[V]ehicle components may be operated by gesture actions, avoiding direct button touch or screen selection, so that the operation is made more convenient, less intensely focused, and overall safety improved." *Id.* "[W]hen the driver needs to focus their attention to

4

driving, the right of operating the execution devices can be transferred to the passenger, so as to avoid distraction of the driver and improve vehicle driving safety." *Id.* at 11. Thunder Power asserts "at least Claim 1" of the patent, which the Court will treat as representative.[1] FAC ¶ 39.

Claim 1 recites:

> A vehicle operating system for operating a vehicle including a driving seat for a vehicle driver and at least one passenger seat for passengers, the vehicle operating system comprising:
>
> camera devices for capturing at least one of images of gestures of the driver and images of gestures of a passenger;
>
> a storage device for storing operating signals corresponding to gesture actions;
>
> a processing device configured to:
>
>> control the camera devices to capture gesture action images of the driver and passenger simultaneously or substantially simultaneously,
>>
>> convert the captured gesture action images into corresponding operating signals according to the operating signals corresponding to the gesture actions stored in the storage device,
>>
>> determine a first operational signal is from a gesture action image for the driver and determine a second operational signal is from a gesture action image for the passenger, the first and second operational signals both for operating a same component of the vehicle,
>>
>> determine whether the first operation signal is consistent with the second operation signal,
>>
>> select the first operational signal as the operating signal and discard the second operational signal by virtue of the first operational signal being from the driver in response to the determination that first operation signal is not consistent with the second operation signal, and

---

[1] As to each of the three patents-in-suit, Thunder Power's FAC asserts only that Byton has infringed "at least Claim 1." FAC ¶¶ 39, 44, 49. However, in its opposition to the motion to dismiss, Thunder Power alleges that "a number of dependent claims make material additions to the inventive concept found in each of the challenged independent claims." ECF No. 44 at 24. A district court may determine that addressing each claim of an asserted patent is unnecessary, if a claim is representative of the others because all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citing *Bilski v. Kappos*, 561 U.S. 593, 612 (2010)). Having considered each claim under this standard, the Court determines that Claim 1 of each patent-in-suit is representative of the other claims in that patent.

send out the operating signals; and

execution devices configured to receive the operating signals sent by the processing device, and to execute operations corresponding to the operating signals.

ECF No. 35-1 at 14. A representative figure in the patent visually depicts this claim:



ECF No. 35-1 at 5.

Byton N.A. argues the '373 patent is ineligible because there is nothing non-abstract or inventive about "the ability to receive signals from two people, determine if they are inconsistent, and if so, perform an operation based on the signal from one of the people." ECF No. 48 at 13. Byton offers the analogy of a football quarterback who observes hand signals from his head coach and offensive coordinator, executing only the head coach's command where the two conflict. ECF No. 37 at 15 n.14. As Byton points out, a claim that could be performed be a human, excising generic computer-implemented steps, is often abstract. *Id.* at 13; *see also Intellectual Ventures I LLC v. Alstom S.A.*, 838 F.3d 13 07, 1318 (Fed. Cir. 2016). This is a fair characterization of Claim 1 of the '373 patent. Ultimately, the patent amounts to little more than a system for "collecting information, analyzing it, and displaying certain results of the collection and analysis," bringing it within "a familiar class of claims" directed to an abstract idea. *West View Research, LLC v. Audi*

1  *AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316, 1318 (Fed. Cir. 2016) (holding that a claimed system for "receiving, screening, and distributing e-mail" was abstract and, ultimately, ineligible because, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper").

*Affinity Labs of Texas, LLC v. Amazon.com Inc.* offers an apt comparison, as that case dealt with a patent for a computer-assisted system much like that claimed by Thunder Power in the '373 patent. 838 F.3d 1266, 1269 (Fed. Cir. 2016). The *Affinity Labs* patent described "a 'media managing system,' . . . a 'collection of instructions' that are 'operable when executed,' . . . [and] a 'network based delivery resource' that retrieves and streams the requested content." *Id.* Without "disclos[ing] any particular mechanism," the "specification describe[d] the function of streaming content to a wireless device, but not a specific means for performing that function." *Id.* Similarly, the '373 patent describes "a vehicle operating system" that "may include . . . camera devices for capturing . . . images of gestures, . . . a storage device for storing operating signals corresponding to gestures," and a "processing device . . . that is configured, for example, to select . . . a gesture command operator, . . . to control the camera device so as to capture" that individual's gestures, to convert those captured images "into corresponding operating signals," and to execute, "by an execution device, the corresponding operation according to the operating signal." ECF 35-1 at 10. Any explanation of *how* these various devices will accomplish these steps, at a technical level, is absent. *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed Cir. 2018) ("while the specification and claims of the [patent] purport to describe an improved user experience . . . the patent is wholly devoid of details which describe *how* this is accomplished").

"At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem. The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs*, 838 F.3d at 1269. Indeed, the Federal Circuit has frequently "treated collecting information, including when limited to particular content[;] analyzing information by steps people go through in their minds[; and then]

7

merely presenting the results [as] abstract." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (collecting cases). Claims, such as Claim 1 of the '373 patent, that focus on a "combination of those abstract-idea processes," without "any particular assertedly inventive technology for performing those functions" are directed to an abstract idea. *Id.* at 1354.

Thunder Power's arguments to the contrary are unconvincing. Thunder Power asserts that each claim of the '373 patent is directed to a patent-eligible concept because each claim is "directed to a specific improvement in vehicle functionality." ECF No. 44 at 13. Thunder Power alleges that the specification outlines the improvements the claims are directed to: First, elements for capturing gesture images and converting those into corresponding operational signals improve vehicle functionality because "avoiding direct button touch or screen selection" makes the operation "more convenient, less intensely focused, and overall safety improved." *Id.* at 13 (quoting ECF No. 35-1 at 10). Second, the claimed identification and conditional hierarchy of gesture actions – identifying signals as originating from either the driver or passenger and treating them accordingly – improves vehicle functionality by "allowing the driver or passenger to utilize [vehicle] function[s] in a less distracting way than conventional methods." *Id.* at 14 (quoting ECF No. 35-1 at 14). Thunder Power points to no other specific improvements to argue that the claims are not abstract.

As Byton correctly points out in reply, ECF No. 48 at 6, "merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1144 (N.D. Cal. 2017) (quoting *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016)). Just because the system claimed by the '373 patent is designed to function solely in the context of a vehicle does not change the fact that the claims are directed to an abstract idea: the ability to receive signals from multiple users, assess whether they are consistent, and, where they are inconsistent, implement the signal of a preferred user. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1373 (Fed. Cir. 2017) (rejecting Plaintiff's argument that the court "should not find the [claims] directed to an abstract idea because they apply to a particular, concrete field – namely, mass transit"). Indeed, "that the steps recited in [Claim 1] are

8

'necessarily' performed 'in the physical, rather than purely conceptual, realm . . . is beside the point.'" *Id.* (quoting *Alice*, 134 S.Ct. at 2358).

Having determined that Claim 1 of the '373 patent is directed to an abstract idea, the court now considers whether the claimed improvement on the prior art nevertheless "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application" under step two. *Alice*, 134 S. Ct. at 2357. Byton argues that it does not, because Claim 1 does not add elements, nor an ordered combination of elements, that amount to significantly more than the abstract idea to which the Claim is directed. ECF No. 37 at 18. Byton emphasizes that Claim 1 does not assert any novel technology to achieve the claimed results, instead relying on generic components "such as computer processors, storage devices, software, firmware, screens, cameras and vehicle operation controls." *Id.* Nor does the '373 patent contain any instructions for programming the generic components to obtain the claimed functionality. *Id.* In response, Thunder Power cites as dispositive the Federal Circuit's observation that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Where "generic components operate in an unconventional manner to achieve an improvement," the claim "provides the requisite 'something more' than the performance of well-understood, routine, and conventional activities previously known to the industry." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).

Again, Byton has the better of the argument. A claim that simply takes an abstract idea and adds "the requirement to perform it on the Internet, or to perform it on a set of generic computer components . . . would not contain an inventive concept." *Bascom*, 827 F.3d at 1350. Here, Thunder Power does not dispute that the '373 patent involves only generic physical components. *See* ECF No. 44 at 22-23; *see also* ECF No. 35-1 at 12. Instead, Thunder Power argues that the components of the vehicle operating system, "in combination, perform special operations that go beyond the standard functions of cameras, processors, and execution devices." *Id.* at 23. Specifically, "the claimed processor must coordinate with the cameras and other devices to capture and analyze gesture action commands from different occupants, identify if a conflict

9

exists between the captured commands, determine which came from the driver, select that command while disregarding the other, and then send out an operating signal to devices within the vehicle commencing execution of the chosen command." *Id.* The Court is unconvinced that this amounts to an inventive concept. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355. And despite Thunder Power's emphasis on this point, the fact that the system outlined in the '373 patent can prioritize between conflicting inputs in selecting an output is not enough to render it inventive. *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, 711 F. App'x 1012, 1014, 1019 (Fed. Cir. 2017) (finding ineligible a patent that purported to improve upon the prior art by "providing a method and apparatus to detect undesirable files stored on computer storage devices according to pre-set criteria"). "In short, each step does no more than require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

Because the Court concludes that the '373 patent is directed toward patent-ineligible subject matter, the Court hereby GRANTS Byton's motion to dismiss Count 1 of the FAC.

**B. The '724 Patent**

The '724 patent is titled "Interchangeable Display of Information Panels on a Dashboard." ECF No. 35-3 at 2. The patent describes a display system in a "transportation apparatus" that displays two different information panels at different positions on a physical LCD screen, switches the positions of the panels in response to a physical user signal, and restores the original display positions after a predetermined time period. FAC ¶ 31. According to Thunder Power, this patent "also increases operational safety in motor vehicles." *Id.* The specification's asserted improvement on the prior art is that, "[c]ompared with the traditional fixed display of information panels . . . the present disclosure may enable the user(s) of the transportation apparatus . . . to swap or move information panels as desired." ECF No. 35-3 at 13. Thunder Power asserts "at least Claim 1" of the patent, which, as noted above, the Court will treat as representative. FAC ¶ 49.

Claim 1 recites:

An information display system in a transportation apparatus, the

information display system comprises:

a liquid crystal display (LCD) screen that occupies at least a portion of a dashboard of the transportation apparatus, wherein the LCD screen is capable of graphically displaying multiple information panels at respective positions on the LCD screen, the information panels being displayed separate and independent from each other on the LCD screen, wherein the information panels include a first information panel and a second information panel; and

a processor configured to:

display the first information panel at a first position on the LCD screen and display the second information panel at a second position on the LCD screen;

receive a user signal indicating a request to switch the display positions of the first and second information panels on the LCD screen;

generate a switch instruction to switch the display of first and second information panels in accordance with the received user signal;

display the first information panel at the second position on the LCD screen and display the second information panel at the first position on the LCD screen in accordance with the generated switch instruction;

generate a switch-back instruction to switch back the display positions of the first information panel and second information panel to their previous display positions prior to the switching after a predetermined time period.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  ECF No. 35-3 at 17.  A representative patent figure visually depicts the claim:



FIG. 9

ECF No. 35-3 at 12.

Byton argues that the patent is ineligible because it claims merely the abstract idea of moving information panels around on a screen based on user commands.  ECF No. 37 at 14, 18. In support, Byton relies heavily on *Interval Licensing*, where the court held that the representative claim, setting forth an "attention manager" to display information on an unused portion of a display screen, was ineligible for patent protection.  896 F.3d at 1346, 1338.  Because the patent's only claim to inventiveness was "using that conventional, pre-existing practice of acquiring information that will then be displayed somewhere (and somehow) adjacent to other information," the court concluded that the claims were directed to patent-ineligible subject matter.  *Id.* at 1348. Byton urges a similar result here.

In opposition, Thunder Power argues that the specification makes clear that "the claims represent specific operational and safety improvements to vehicle technology."  ECF No. 44 at 16. Specifically, "the claimed elements function together to allow users in a vehicle to share information via independent panels."  *Id.* at 23.  The Court finds these assertions unconvincing. As Byton argues, *Interval Licensing* is instructive here.  The Federal Circuit found the claims in

12

that case related to two abstract functions, like those presented by the '724 patent: "(i) enabling the acquisition of content to be displayed; and (ii) enabling control over when to display the acquired content, for how long, and then displaying it." 896 F.3d at 1340. To this abstract concept, the '724 patent adds only the feature of two display panels with the ability to switch back to their original positions automatically after a predetermined period. The Court finds this feature insufficient to render the abstract idea set forth in Claim 1 into an inventive concept. Indeed, "[o]ffering a user the ability to select information to be displayed is one of the 'most basic functions of a computer.'" *Id.* at 1347 (quoting *Alice*, 134 S. Ct. at 2359). At the level of generality of the specification and claims, the '724 patent asserts no improvement beyond "the presentation of information in conjunction with other information," despite its attempts to describe the switch-back feature as novel. *Id.* Accordingly, it is directed toward patent-ineligible subject matter. The Court hereby GRANTS Byton N.A.'s motion to dismiss Count 3 of the FAC.

### C. The '329 Patent

The '329 patent is also entitled "Interchangeable Display of Information Panels on a Dashboard." ECF No. 35-2 at 2. Claim 1 of the '329 patent is similar to Claim 1 of the '724 patent but does not specify an LCD screen. FAC ¶ 32. Instead of a switch-back feature, the processor claimed in the '329 patent receives a user signal requesting duplication of the display of the first information panel at a third display position on the dashboard screen. *Id.* Again, Thunder Power alleges that this screen-duplication feature "represents an important technological and safety advancement over the prior art in a field where operational safety is paramount." *Id.* at 33. The specification notes that "[c]ompared with the traditional fixed display of information panels . . . the present disclosure may advantageously let the user(s) of the transportation apparatus share information with another user . . . by displaying one or more information panels at display position(s) on the dashboard screen convenient for the shared users' viewing." ECF No. 35-3 at 13. Thunder Power asserts "at least Claim 1" of the patent, which, again, the Court will treat as representative. FAC ¶ 44.

Claim 1 asserts:

An information display system in a transportation apparatus, the information display system comprises:

a dashboard screen that occupies at least a portion of a dashboard of the transportation apparatus, wherein the dashboard screen is capable of graphically displaying multiple information panels at respective positions on the dashboard screen, the information panels being displayed separate and independent from each other on the dashboard screen, wherein the information panels include a first information panel and a second information panel; and

a processor configured to:

display the first information panel at a first position on the dashboard screen and display the second information panel at a second position on the LCD screen;

receive a user signal indicating a request to switch the display positions of the first and second information panels on the dashboard screen;

generate a switch instruction to switch the display of first and second information panels in accordance with the received user signal;

display the first information panel at the second position on the dashboard screen and display the second information panel at the first position on the dashboard screen in accordance with the generated switch instruction;

receive a user signal indicating a request to duplicate the display of the first information panel at a third display position on the dashboard screen; and

display the first information panel at third display position on the dashboard screen in response to the user signal being received.

ECF No. 35-2 at 17. A representative figure from the patent visually depicts the claim:



FIG. 9

14

ECF No. 35-2 at 12.

The parties address the '329 and '724 patents as a paired set. *See, e.g.*, ECF Nos. 37 at 8-9, 14, 18; 44 at 10-11, 14, 16, 18. The Court agrees with this approach and concludes that the '329 patent is substantially similar to the ineligible '724 patent. If anything, the '329 patent is even more abstract and less inventive, as it involves literally no more than moving a display from one location on a dashboard screen to another in response to a user instruction. Accordingly, Claim 1 of the '329 patent is ineligible for patent protection, for the same reasons outlined as to the '724 patent. The Court GRANTS Byton's motion to dismiss Count 2 of the FAC.

## CONCLUSION

Byton N.A.'s motion to dismiss is GRANTED. Although the Court doubts whether the deficiencies in Thunder Power's complaint can be cured, *see Papst Licensing GmbH*, 193 F. Supp. 3d at 1095, the Federal Circuit has made clear that any doubt should be resolved in favor of permitting amendment. *Aatrix*, 882 F.3d at 1126-28. Accordingly, dismissal is with leave to amend. Byton may amend its complaint within 21 days of the issuance of this order solely for the purpose of curing the deficiencies identified in this order.

Thunder Power's preliminary injunction motion is denied as moot.

The Court sets a further case management conference on January 9, 2019 at 2:00 p.m. An updated joint case management statement is due by January 2, 2019.

**IT IS SO ORDERED.**

Dated: October 31, 2018

_____
JON S. TIGAR
United States District Judge